Thank you, Your Honor. I may please record James Fife of Federal Defenders on behalf of the appellant, Mr. Moreno. The prosecution knowingly and willfully refused to disclose potentially powerful impeachment evidence against its star witness, Ortiz, in violation of Brady v. Maryland. The psychological evaluation of Ortiz contained evidence by which Mr. Moreno could have attacked the veracity, bias, memory, and even the perception of the one witness who could link Mr. Moreno to cross-border acts essential for the brings-to convictions. In any event, the indictments must be dismissed because Mr. Moreno was not brought to trial within 70 days, thus making the second indictment timely as well. I'd like to move to the Brady issue first. I'd be very interested in what you see in the psychiatric evaluation that would have been helpful to you. Brady requires that anything that would be helpful needs to be disclosed. And as I look at it, I don't see what's helpful here. I mean, most of what was in there came out anyway in another context. But would you point to me specifically what you see in the psychiatric evaluation that was not given to your client that you believe was a Brady violation? As a matter of fact, Your Honor, I don't have that evaluation report. It was not disclosed. Only a couple of sections were disclosed by Judge Benitez. So as a matter of fact, I have no idea what's in the report, the substance. I know what goes into psychological evaluation. Let me ask you this. If we have it pursuant to the process and we conclude that there is nothing helpful there, do you believe that's the end of that part of your argument? If the Court finds that there's nothing material based on the arguments that I presented, then, yeah, there's really nothing I can say about that. That's why it was submitted to the Court to decide its materiality and what prejudice. Okay. But, in fact, I hope that each member of the Court has a copy of a demonstrative exhibit, which is on a goldenrod paper, which I submitted. The first exhibit on that handout, it's just a tabular summarization of ‑‑ It's not being made available to judges. I asked the clerk to have it faxed to Judge Gould. Yes, I received it by fax. Thank you. I've got it. Very well. Thank you. This is just a tabular summation of the material, which is on pages 37 to 39 of the opening brief, indicating just for two of the diagnosed conditions of Mr. Ortiz, PTSD and severe depression, what just consulting standard psychological materials indicate the possible effects on Ortiz's testimony. For instance, that for someone who is suffering from PTSD during periods of stress and hypervigilance, it can affect their perception and their recall that PTSD is associated with a number of other DSM diagnoses, as, in fact, we can see from the small part of the report that was disclosed, including personality disorders. PTSD is associated with paranoid ideation, with impulsive and self‑destructive behavior, with personality changes, with loss of prior beliefs, and disassociative symptoms, which can affect the integration of consciousness, memory, and perception. Amnesia, too extensive to be explained by mere forgetfulness. Severe depression, which can be manifested by anger and blaming others for one's problems. Excessive tearfulness. Impaired thinking, concentration, and decision‑making. Increased distraction that affects the memory. Panic attacks, especially during stressful driving episodes. These were all facts that were at issue here in this very case. As I pointed out in the briefs, there were numerous instances where Mr. Ortiz was broke down in tears on the stand, which the jury could only have interpreted having nothing else to go on, as his extreme remorse at what had happened, that he'd been duped into this. His blaming Mr. Moreno fits this very syndrome, which... There was cross‑examination, but only on the extent of what was visible there on the stand. Defense counsel had no means to either consult with an expert or to call an expert witness to provide any kind of scientific medical evidence that some of these things that the way, not only what Mr. Ortiz was saying, but the very way that he testified on the stand, could be explained as the results of diagnosed medical, mental impairments. And I believe that that is extremely material. This is something that would have put Mr. Ortiz's testimony in a vastly different light in front of the jury. For instance, if it knew that his shifting blame to other people for his problems, that his excessive tearfulness was not genuine remorse, but manifestations of serious mental impairments, that is extremely powerful impeachment evidence against this major witness. The government attempted to portray Ortiz in kind of an almost bolstering way, which was objected to by the defense, that he was a war veteran, that he was applying to the border patrol, that he was someone that was badgered into doing this, that this was not something that, given his background, he would likely do. But just looking at a standard description of PTSD shows that that's one of the main reflections of that syndrome, is that people's prior beliefs disappear. They behave in ways that are totally abracadabra compared to their past behavior. One only has to look at the newspapers to see that war veterans who've gone through battle stress in Iraq and Afghanistan suddenly have found them behaving in ways which are seriously at odds with their prior honorable position. Now, this jury was only told about this honorable war record, about his applying for the border patrol. It had no information that this aberrant behavior may have nothing to do with Mr. Moreno or anybody else badgering him and pressing upon him to engage in criminal behavior against his will. It could very well have been a reflection of something he was independently inclined to do. And instead of taking an assault rifle and going to a shopping mall, luckily he only engaged in alien smuggling activity, which didn't lead to something more disastrous. But we're all familiar with these kinds of syndromes leading to much more aberrant and destructive behavior. Now, just by looking, I don't have any more of this report than what's in the record in the excerpt, the few lines that were revealed. It was given the referral. The judge revealed the referral section of the report and the diagnosis. So all we know, all the defense knows is what did Judge – what did Dr. DeFrancesca find were the actual diagnosis and the reason why he was referred. That is not enough to take to any respectable psychologist or psychiatrist and ask them to render opinions on how this would affect this particular witness's testimony. A trial – speaking of trial counsel, I gave a very appropriate and apt analogy. It's like asking an attorney or a judge to evaluate an appellate argument by only reading the jurisdictional statement and the concluding paragraph of a brief. Now, no lawyer could say that they can tell you whether this is a good appellate argument or whether it applies in other cases and what its significance is for other cases by reading nothing in the brief except the conclusion. And that's the same thing that the defense was faced with. They were given the conclusion. Ortiz has these mental impairments, serious mental impairments, but as far as being able to effectively cross-examine Mr. Ortiz on that, there was nothing by which defense counsel could go on. And the district judge specifically ruled that the report would not come into evidence, but the judge would consider live testimony. But where could defense counsel get a respectable expert witness who could render a valuable, effective opinion without seeing the data, without seeing the reasoning that Dr. DeFrancesca went through to come to this diagnosis? So what was revealed is enough to indicate, as you see in Exhibit 1 here, that there was plenty of possibilities, potentials, for attacking devastatingly various aspects of Ortiz's important testimony. And that's what makes it material. That's what makes it, under the standards that has been recognized recently by the Court in Price, that we only need a reasonable probability that this would affect the outcome of the case, that undermines significant enough to undermine confidence in the verdict. And if this kind of devastating psychological evidence were admitted to attack the key witness in this case, I believe that is far sufficient enough to attack the, to undermine confidence in this verdict. There was no one else linking Mr. Moreno to cross-border activities, which was necessary for the brings to convictions. Counsel, do you want to speak about the great jury instructions issued? Well, Your Honor, I... We had some discussion in another case. We did, Your Honor. And I do argue that that's not moot in this case, and I, as the government argued. But I would point out that I don't think this Court needs to reach the instruction issue, because it's really an alternate second reason why the first indictment was invalid. And it really is a backup to the speedy trial argument. If the first indictment is invalid for either reason, because it was untimely or because the grand jury was misinstructed, the government has a problem. And so I would rather go with the speedy trial argument, because that's more concrete and straightforward. This Court's not required to interpret what was being said in Navarro. But do you agree, if we had to get to this issue, that since the second superseding and rather the superseding indictment was issued in this case, that basically the first grand jury problem goes away in effect? No. In fact, Your Honor, I know the Court asked me to look at Gastel and Malmeda, and I will reply to that. Let me just lay out the basic problem here, is that if we just look at the problem with the governing indictment, it was filed in September. Mr. Moran was arrested in February. There's a seven-year procedural vacuum, seven-month, excuse me, seven-month procedural vacuum between the arrest and the governing indictment. The government needs that first indictment to act as a bridge, a procedural bridge, to avoid the timeliness. So if that first indictment is invalid, it's a legal nullity, and there is no procedural bridge between the arrest and the indictment in September. And that's why I say because of two independent reasons, that first indictment is invalid, should have been dismissed because it was untimely, and because the jury was misinstructed, that there is that procedural bridge that the government needs is missing. And so it was filed more than 30 days from the arrest. Now, I think it's pretty clear that the first indictment was untimely, because under any one of three different calculations, it was more than 70 days before going to trial. The major question of dispute was whether a discovery motion filed in April told the Speedy Trial Act. And as I've argued, it doesn't, because as this Court has ruled in multiple cases, in Sutter and in the government's own case, Medina, that boilerplate, perfunctory discovery motions that don't raise any real disputes do not toll time. And this is about as boilerplate a discovery motion as could be. As I pointed out, when originally filed, it was filed with the wrong caption, the wrong case number, the wrong hearing date. Later, an amended one was filed, which, except for changing the caption, was identical. And so it shows that this was totally fungible with any other 1324 case. And in fact, the government never did file a response or raise any dispute prior to the hearing. So this was an undisputed discovery matter, just as in Sutter and as in Medina. So it doesn't toll time. In any event, as I point out, after the opening brief was filed, the Supreme Court decided Gloat v. United States and said that unless there is an express finding of the ends of justice, that time for preparing pretrial motions does not toll. And so for another reason, the time between April 18th or April 21st before May 22nd doesn't toll. So under any of those three possible calculations, even by the government's most generous calculation, the government forgot to include the time after disposition in August until the next tolling event. That's another 19 days. Either way, there's either 82 days that expired before a tolling event, or cumulatively 71 days before a final tolling event. Under any of those three calculations, the first indictment must be dismissed as untimely.  Thank you, Your Honor. Mr. Chairman. Good morning. Kyle Hoffman from the United States. I'd like to take up where counsel began, and that's on the Brady issue. I believe counsel said that the government knowingly and willfully withheld what counsel describes as Brady material, what happened was the district court provided to the, or the government provided to the district court in camera the psychological report that is now before Your Honors. It was inadvertently disclosed to defense counsel in a motions hearing, so defense counsel was aware of its existence. Then there was some disclosure of the facts of the underlying offense, so parts of the report were disclosed. And I would also note, and counsel has made it pretty clear, that the diagnosis was disclosed. Nobody's in any kind of confusion about what the ultimate diagnosis was. It was PTSD. So insofar as counsel's arguing, well, we would have made use of that at trial, the diagnosis is there, and the impairments that follow from that would be there. Did the defense counsel make use of that in trial? No. Did not. No. Now, for all those reasons, I would suggest that the characterization of knowingly and willfully withholding information is overstrong. And I'd like to step back and get away from the kind of the blame part of it and look at it in a more, I hope a little more dispassionate way and say I think what you would see when you look at the record is that all the parties are trying to do the best they can under the circumstances, the district court, defense counsel, and the government. And I would suggest that once you look at the district court actually getting the material, looking at it, said twice, I've read it, and I find, twice I've read it, that's at ER 8 and 9, and then says I find there is absolutely nothing helpful to you there. And I believe that's at ER 10. Let me just make sure I've got the record so correct. But that's what's under review, is it not? Well, I...  I think Judge Smith was suggesting if we agree with the court, then that's the end of the issue. And I think that's right. If you agree there's nothing helpful there. I guess I'd go back further and suggest even if you disagree with the court, the district court on that point, still I would urge there's no Brady violation. And here's the ultimate reason. The court can be assured that in essence justice was done in this case. The verdict would not have turned out differently. This, the report is about Ortiz. Well, assurances like that from the United States are not necessarily persuasive. I understand. But what I'm going to point the court to is the evidence and what happened at trial. And I'd suggest that what you have is you have the notion that this report would have enabled more impeachment of Ortiz in one way or another. Ortiz was impeached from the moment trial began. He lied at the court of entry. He... And that was made much use of from opening statement on. I'll just point to the opening statement of the defense counsel. Also, in opening statement of defense counsel, his motivation to lie, that is the plea agreement, was made the central theme of opening statement. So the notion that he's a liar and he's got motivation to pin it on Archer Moreno, that's all over from the opening statement. And that begins at ER 94, goes to 98 and 99. That's just the beginning. If you look at the cross-examination of Mr. Ortiz, the notion that he's a liar and that he's got all the motivation in the world to basically point the finger at Mr. Moreno is all over the place. I'd actually suggest to the court that, in fact, Mr. Ortiz was bludgeoned with his motivation and his lying. And, in fact, it backfired. I suggest that if you read the cross-examination, that will come through. In fact, counsel was admonished by the court twice to basically stop arguing with the witness, to treat the witness with respect. And counsel at the very beginning of his closing argument, this is defense counsel, said, I apologize if I seem rude to Mr. Ortiz. In other words, what I'm suggesting is the notion that there was any more impeachment to be done of Mr. Ortiz, I would disagree with that. Then I would urge, that's just Mr. Ortiz. We've got the other witnesses, the material witnesses, the witness, Mr. Canes, who essentially corroborated the story about the recruiting for Mr. Moreno. The material witnesses have said Mr. Moreno showed up while he was still in the trunk, and he came and helped us out, and so on. So there's other evidence. So that's why I would suggest there's no standard that you can feel confidence in the verdict for those reasons. That would be my suggestion. But you're suggesting it's almost a harmless error analysis. I would suggest the evidence is almost that strong, yes. And I don't know that that needs to be that strong under the standard. I think it's a – the standard is, does it undermine the confidence in the verdict? And I suggest that's not the case here. Would you say anything on the speedy trial? I would, Your Honor. And I think – well, there are two things. There's the issue of the discovery motion. Now, the first thing is that everybody's agreed that the district court's findings are – findings of fact on the speedy trial issue are reviewed for clear error. The district court in this case made a finding of fact, I would suggest, that the discovery motion told the clock on April 18th. Now, I would suggest there's good reason for that. Counsel for Mr. Ortiz said, I filed the discovery motion. It's docket entry 23, and we have some discovery issues. That's a statement from Mr. Ortiz's counsel. And then you have a statement from – this is at SER 2. Then you have a statement from Mr. Moreno's counsel who says, I'm in the same boat at this point. If I could join in a discovery motion at this point, and that motion is granted, and then it's set for a hearing on June 2nd. I would suggest this is very distinguishable. He told, with respect to Mr. Moreno, that because he joined in the motion. Well, he didn't need to. Actually, I think the law is that a motion of one co-defendant will toll it to both. But I guess I'm making, in a sense, an equitable argument. You've got counsel for Mr. Moreno saying, seconding, so to speak, Mr. Ortiz's comments. There are some discovery issues. And then you have Mr. Moreno's counsel saying, I'm in the same boat, and I would join in that motion. Counsel, could you spend a few minutes on the grand jury issue, and why the government thinks it's moot, and how you respond to the defense argument? Well, I would suggest this. I think it's undisputed that we're talking about two different grand juries. So there's the grand jury of the first, the original indictment, and then the grand jury of the superseding indictment. And the conviction was on the superseding indictment. I think that the counsel's argument, and he used the word that I would have used too, depends on the assumption or the premise that the first indictment was a legal nullity, because of the alleged defects in the charge. And I suggest there's just no legal authority for that crucial proposition. That is, the claims about the charge render the first indictment a legal nullity for purposes of speedy trial act. Then I'd also suggest this. If you think about it, the complaint was essentially charging of bringing to the country for financial gain. The first indictment had those charges and two others, actually, bringing without presentation. And the superseding indictment contained bringing to for financial gain and then three other different charges. And then he was convicted on all of those charges, beyond a reasonable doubt. I'd suggest that the mechanic Navarro rule applies in these circumstances as well, because you've got all the way along, you've got a grand jury finding probable cause, and then you have it reinforced and underscored because a pettit jury has found beyond a reasonable doubt on the very charges that met the timelines brought before a grand jury, arraigned within 30 days, and then tried within 70 days. So that would be the government's argument. I don't want to unnecessarily take the Court's time. If the Court has further questions. No further questions, Counsel. Thank you. Thank you. Mr. Rapaio, you're next. Yeah. I think I've run through some points in reply very quickly. How could the defense counsel use this report? No respectable psychologist would render an opinion based on the amount of material that was disclosed. A few lines out of a six-page report. The data and the reasoning was required, and the report itself was ruled inadmissible. So the only way that the defense counsel could have made use of this information, instead of just making aspersions of the witness on the stand, would be to bring in an expert witness. But he couldn't do that without the basis for doing it. This was the government's star witness. He had major, serious mental impairments. Going to specific issues in this case. Counsel, how do you address the government's position that Mr. Ortiz was repeatedly bludgeoned about his credibility, everything about him, and you had these two material witnesses in the trunk? How do you address that? My next point is I would analogize this to other cross-examination limitation cases, like Davis v. Alaska, where the Supreme Court said, the fact that you're able to do some cross-examination doesn't mean that it's acceptable to eliminate other more effective ways of cross-examining this witness. In fact, one case I cited, the Bailey case, specifically pointed out that a neutral psychologist's report is far different from other types of evidence about mental impairment, because the jury is going to give much more credence to a neutral doctor coming in and talking about this. And it would exactly avoid the problem that the counsel pointed out. It would avoid defense counsel looking like he was beating up on this defendant. To have a neutral doctor come in and say, well, someone who has these conditions, and Mr. Ortiz has them, this is his likely behavior effect on his testimony. I've got one question, if I may. Certainly. I didn't hear you respond to Judge Smith's other question, and I'd like to hear your perspective. How do you respond to the fact there were other witnesses that sort of corroborated Ortiz's story? He was recruited by Moreno. You've got Kenneth saying he was there when a pitch was made, and he said no, and Ortiz said yes. And you've got the alien saying this was the guy who helped them out of the trunk after they got here. To answer both of those, Cáñez was massively impeached even by the government's own witness, Willie Lopez, who denied that any of these meetings took place. Two critical meetings that Cáñez testified to, Willie Lopez says they didn't happen. That was the government's own witness, so I think Cáñez was not a very effective piece of corroboration. In any event, Cáñez had nothing to say about cross-border activities, and that's why the material witnesses' testimony doesn't add anything to the brings-to case, because all that was testifying to was acts taking place on this side, the domestic side of the border. And the planning itself doesn't show cross-border activity required by United States versus Lopez, because in a case I cited in the brief, United States versus Singh, where there was actually – where the transporter was actually calling across the border to Canada, arranging the transportation. The Court said that's not enough. That's not enough by itself to show a cross-border connection to comply with Lopez. Thank you. Okay. Thank you. I took you over your time. I appreciate it. That's all right. Thank you. The case just argued will be submitted for decision.
judges: O'scannlain, Gould, Smith M.